Good morning, and may it please the Court, Jay Marks on behalf of Petitioner Julio Sosa Uvalle, I'm very pleased also to introduce to the Court his family, who is here today, his wife and child. Your Honors, the Immigration Judge and the Board of Immigration Appeals erred in multiple instances in this case in finding that, well, on the Immigration Court side, that Petitioner's violation of 8301c1 of the criminal law article, the Maryland Code, was a crime involving perpetuity. The Board of Immigration Appeals erred in failing to address this issue completely on two occasions. 8301c1 is simply not a crime involving moral turpitude. Using the modified categorical approach, it has no fraudulent intent. It can be committed by giving false information to a private individual, as Mr. Aishola did and Aishola V. State, as we raised in our briefs. It makes no mention that the false statement has to be made in the course of law enforcement action or a police investigation. I don't want to derail you, and you can come back to this. But before we get into the merits of that argument, you agreed that the Board didn't rule on this. The Board, your argument was the Board skipped a step that's required, right? That is correct. They skipped a step that was required. And you're familiar with Chenery, which says we can't rule on a basis that the Board didn't rule on. Well, Your Honor, we're actually looking at, and our position is that I, Hua Chen, V. Holder, at 742 F. 3rd 171, allows this court to look both at the Board and the IJs decisions. When the Board adopts the IJs and affirms the IJs decision, but supplements. But it didn't adopt that part, right? It didn't adopt the CIMT analysis. And there, arguably, the Board could have, what it did was said, you have to have a waiver, and we find you don't qualify for a waiver. It could have instead skipped the CIMT analysis and said, we're going to deny adjustment status on discretionary grounds, just as a matter of, even if you qualify, we're going to deny it as a matter of discretion, right? So, doesn't that counsel against us ruling on the legal issue? We could say, this is not a CIMT, and it goes back and the Board says, regardless, we're still going to deny it adjustment on discretionary grounds. So, allow me to address the issue of this court's authority to address the CIMT in the first instance. Okay, but before that, do you agree that no matter what we do, if it goes back to the Board, they can still deny adjustment on discretionary grounds? They could. And the factors that they consider are the same as the factors they consider for waiver in a miscivility. But here's what would change. Do you agree that the factors are the same? The discretionary factors are the same, but the CIMT definitely creates a thumb on the scale against discretion. The existence of the CIMT, and our contention is the mistaken conclusion that it's a CIMT, is a thumb on the scale against grant, a grant of the adjustment application, the waiver and then the adjustment, or the application for cancellation removal. The thumb on the scale is in the negative equities, we are going to look at the CIMT as a big negative equity. And that, the entire need for the waiver would be eliminated. And we would just be looking at an adjustment application with all of the equities, the family, the medical, the child, the emotional state of the child, all of these things. And we would be looking at the convictions as negative equities, but they wouldn't require a waiver. There would not be yet an additional hurdle. So while the court is correct, discretion is discretion, whether it's discretion in a waiver or it's discretion in adjustment. The presence of the CIMT is the 900-pound gorilla that is causing really the big problem. And that we could get to a new calculus of equity balancing without the CIMT that could lead to adjustment. But how do we get to the, how do we, how do we hold in your view that this is not a CIMT? So three points that we'd like to raise. The first is that the Nunez-Vasquez decision is so close here that it points the way. It's the North Star here that clearly illuminates the correct conclusion. And the two statutes are so similar that it would truly be an injustice to remand again to the board. Excuse me, counsel. I don't necessarily see the two statutes as being identical. And the point that was emphasized in the Nunez-Vasquez case was that there could be a false expression of identity in the private sector to simply a cashier. And it doesn't seem to me the text of the Maryland statute can be read to impose criminal liability under this statute for a false representation or a false claim of identity for a, let's say, a Target or Walmart cashier. It says in order to avoid assuming the identity to avoid identification, apprehension or prosecution for a crime. So it doesn't. So I'm still wondering how you get to the idea that if you assume someone's identity and we're talking about identity theft here. If you assume somebody's identity in order to avoid prosecution for a crime, that's certainly an affirmative act of concealment. And it has a men's array of knowingly and willfully. And in addition to that men's array, I don't understand why this wouldn't be turpitudinous to assume somebody's somebody's steal somebody's identity in order to represent some of a false identity in order to avoid a void prosecution. Why isn't that a willful commission of a turpitudinous act? I'd like to answer both. What I hear are two questions, Your Honor, if I may. The first is I show the state, the Maryland statute, the Maryland case that we discuss in our briefs. Clearly, Mr. Ishola went to a bank and told the teller my name is X when his name was actually Mr. Ishola. And the result was he was prosecuted under 8301C1. This was not, this was a private actor, a bank. This was not a police officer. There was no criminal investigation happening. So he was trying to avoid detection, committing a crime, but he did it in the private sector, if you will, almost akin to going to a Walmart or a Target and telling a cashier a different name than one's true name. So it certainly is possible to be convicted under this statute for merely uttering a falsity to say a bank teller because Mr. Ishola was convicted that way. The second question that I hear Your Honor asking is why is this not morally turpitudinous? Why isn't it reprehensible? And I believe that the court most respectfully is conflating the way the Tenth Circuit counsel does not conflate false statement crimes with crimes that contain fraudulent intent. C1 does not contain any fraudulent intent. Now, this court clearly showed in Vasquez, Nunez-Vasquez, that the absence of the fraudulent intent was key to this. The Virginia statute is quite clear. Juvenus Alvarez says you're supposed to have some actual prosecutions and to illustrate your point. And have there been any Maryland prosecutions under this particular statute for a false statement to a teller? Yes, Your Honor. Mr. Ishola and Ishola v. State. Who? Ishola v. State. And I do apologize. I don't have the citation here with me, but it is in our supplemental brief and in our original brief in the matter. But Mr. Ishola did go to a bank, say his name was not Mr. Ishola, used a false name, and was prosecuted under the statute. So from our perspective... He was prosecuted under C1? Yes, Your Honor. So from our perspective, this court also has the authority to pronounce, even though the board has decided not to. Because determining whether a state statute is or is not categorically a crime involving an alterpitude or aggravated felony for that matter, is not in the exclusive province of the Board of Immigration Appeals. This is a state criminal statute and this court routinely and as part of its authority... We're not obligated to do that. We're not obligated to pronounce. It looks like a little bit, it could be read as a little bit like an advisory opinion. And as Judge Rushing points out, it certainly raises questions about Chenery and jumping out, jumping the gun out ahead of the board. And, you know, Chenery still maintains some vitality. Yes, Your Honor. And the third thing that I would like to raise, the third reason why I don't think this court, if it decided to pronounce in the first instance and not allow the board the opportunity first to pronounce on whether 8301C is a CIMT or not, is because the board has had at least two opportunities here, at least, to do this, and they have simply skirted it. The first time was when the immigration judge filed, sent the case up, we filed our appeal, and for some... I mean, I understand that argument and it might be true, but doesn't the recent Nunez-Vazquez case give the board something to consider in the first instance? I mean, in those previous instances where you say the board has passed, did they have the Nunez-Vazquez case in front of them? Not the first time, but they didn't need Nunez-Vazquez to make the conclusion, to reach the conclusion that 8301C is not a crime involving moral turpitude. They didn't need it because the categorical approach has not existed. Maybe yes, maybe no, but hasn't Congress delegated to the board a considerable authority in this area and the board has detailed requirements and criteria for when something is a CIMT and when it's not? And isn't there an advantage to having some administrative consistency on this, on the interpretations of CIMTs and what is and what isn't? And the board is the best, is the one, because it's dealing with these things on a regular basis, is the best one to be able to supply that consistency. But this court said in Amos v. Lynch and in Solomon versus Gonzalez, and I see my time is up. No, go ahead and complete your sentence. Thank you very much. In Amos v. Lynch and in Solomon versus Holder, no, Gonzalez, this court said that questions of whether a state statute is or is not an aggravated felony or a CIMT are issues or decisions that can be made by this court without stepping on the board's, the executive branch's toes, without violating our separation of powers. But it's still prudential whether to remand. Yes, Your Honor. All right, thank you. Let me see if my colleagues have any questions. Judge Rushing, Judge Floyd, do you have? Yes, Your Honor. All right, let's, um, how's this, Ms. Arthur, do you, let's hear your side of it. Good morning, Your Honors, may it please the court, I'm Ashley Arthur on behalf of the Attorney General of the United States. Remand is an appropriate vehicle for this case for the board to fully address petitioners' arguments and to address the I.J.'s determination that the conviction under Maryland's I.D. Could you put that microphone a little bit closer to you? That would be, that's going to be great. Thank you. Remand is an appropriate vehicle in this case for the board to fully consider petitioners' arguments and to address the I.J.'s determination that the conviction under Maryland's I.D. Fraud statute was categorically a crime involving moral turpitude. As Judge Wilkinson noted, this case involves a chinnery issue, which is why we prefer remand for the board to consider the CIMT issue in the first instance. Expounding any further would be a chinnery violation because there is no clear precedent from the board. So, at this time, I cannot make any predictions about what the generic elements and factors would be, let alone how the board would decide the issue, what analytical framework that includes. Can I ask you, the government filed a motion to remand originally in this case. It was one and a half pages. And did you mention any of these reasons for remand in that motion? I don't recall hearing them. That's not to say you can't raise them now because we denied that motion and now we're going to decide the merits one way or the other. But these would have been good points to make in your motion to remand. When those motions are opposed by a petitioner, we have to find a reason to grant it. And the government doesn't have to admit fault. I understand that. But we see a lot of motions that just say the government suggests remand for the board to consider any and all possible arguments. And that doesn't give us much to go on. Yes. In our remand motion, we filed that remand motion because we did catch that the board skipped that threshold determination. So you didn't admit that in the motion, right? You didn't admit any error by the board. So now we have to have argument and find the board did commit an error by skipping a required element. Even though, as we've discussed, if this goes back to the board, the board could, as a matter of discretion, deny relief anyway, regardless of what it concludes on CIMT. Is that right? That's correct, Your Honor. No matter what, this case is going to be remanded. If it is a CIMT, then the board already addressed the merits on the waiver. If it is a CIMT, a waiver was required for it to address the merits there, and there's nothing much more for the court to do in that regard. And if the court wants to do the work and reach the issue, which it doesn't have to, then it still is remanded to the board, and the board would have to decide whether the adjustment application should be granted as a matter of discretion. And we believe it's likely that the board would find that relief is not warranted here. We strongly hinted at the outcome of the case here. We don't believe this is a good vehicle for the court to reach the CIMT issue because strongly hinted that the petitioner in this case is not going to get the relief. And that's the factors for denying adjustment as a matter of discretion are the same as the factors for a waiver. Yes, so we don't know for sure why the board didn't reach the threshold CIMT issue first. So, we surmise it must have been that the board is thinking it's a foregone conclusion. But because there's no governing precedent, we prefer remand for the board to provide guidance since there's nothing out there on this issue at one point. And while opposing counsel believes that if this is not a CRMT, then the positive factors would somehow push the case into a grant of adjustment. The board expressly upheld the IJ's determination that the negative factors outweigh the discretion because we have tax irregularities, the ID theft conviction, public intoxication from 2017, and then two DUIs from 2019. So, there were other factors that the agency determined weighed against discretion or cancellation removal. And we believe this strongly indicates what the outcome of this case would be. And it's not a good vehicle for the court to have to do the work and reach the CIMT issue. And no matter what, it's going to be remanded. So, what do you mean, no matter what happens, the case is going to be remanded? Well, if the court decides that this, if it wants to do the work and decide that this conviction was a CIMT, the work still has, the BIA still has work to do because it would have to be remanded for the BIA to determine as a discretionary matter, whether adjustment is warranted. And if it is a CIMT, and that's what the court wants to uphold and, well, then there's nothing much more to do because the board already reached the waiver issue on the merits. And of course, there is a second issue in this case regarding cancellation removal, if you want me to move on to that. The court lacks jurisdiction over the discretionary denial of cancellation removal, which the board upheld. So, just give me a sense of, is this issue an important one in maintaining consistency in the board's CIMT jurisprudence? Is it, just in practical terms, explain to me why, what, what argues for remand? Does the board need this for consistency? Is this important in terms of the effect upon immigration law? What, I mean, just what practical considerations warrant giving the board a crack at this? Your Honor, because we do not have clear precedent from the board about the umbrella of IDFACT, let alone the nuances of this particular statute, it'd be incredibly helpful going forward in other cases, as well as this one, as to what analytical framework the board would want to work with, what it would consider an inherently fraudulent offense. We do not know what the board is thinking with this type of offense. We don't have any on-point precedent, and it'd be extremely helpful for the board to finally illuminate what we're working with here. Excuse me, Judge, before I go to you. Or is it for the BIA?  Is your request for the convenience of the Department of Justice or the BIA? Our request would benefit all parties, including this court and all circuits, because we would potentially now have precedent from the board that would illuminate what factors it considers important in these ID theft type offenses. And it's really within the board's purview to reach that in the first instance for the court to decide potentially the generic elements, and that's within the board's purview. And because this is novel in the sense that we have nothing on point, it would be probably best handled for the board first. The court doesn't have to reach issues that are unnecessary for the court to decide a case. And here the court could remand for the board to provide some illumination, and no matter what, the case would be remanded unless, of course, the court just upholds that it is indeed. Would our decision be binding in any sense on the board? This court's decision to remand, so if the court decides this is a CRMT, would that be binding on the board? Is that your question? Yeah. Well, the board usually follows the precedent of the circuit in which it sits, so that would play a part. The department prefers the board to have the first crack at these issues because it is within its purview to decide how these, and there's nothing here that's been decided yet by the board, how these offenses would even qualify as a CRMT. We don't know if they're going to decide it's a CRMT or not. There's uncertainty. It seems like a foregone conclusion. No matter what, a petitioner is highly unlikely to get the release he seeks. And so this case isn't the best vehicle, but it could still be helpful to have an unpublished, unpresidential decision from the board, and hopefully another case comes along where… How many statutes are there like this Maryland statute? Is this one of a kind, or are identity theft statutes written in this kind of way pretty common? So, the identity theft statute Maryland that I'm most familiar with is the one that's the main issue here today. The identity fraud statute from 2009, which was the one petitioner was convicted of at the time of the previous version, that's the only identity fraud statute I'm aware of that criminalizes identity fraud in Maryland. And I'm happy to do further research if you're curious to see how Maryland criminalizes identity fraud in other instances. But it appears that the primary issue here is Maryland statute, which states a person may not knowingly and willfully assume the identity of another to avoid identification, apprehension or prosecution for a crime. And that's the statute petitioner was convicted under. And I'd like to point out that that statute differs from the Virginia identity theft statute, which does not have willful and knowing language. Your opponent says that it's still possible to convict under the statute for a statement made to a private teller, because you could be making a statement to a private teller in order to avoid conviction for a crime. There were several factors in Nunez that the court considered to arrive at its ultimate decision that it was not a CIMT. The court did not hang its hat on nearly the private person aspect alone. The court also noted that the factors in Nunez, there was a fictitious person that could possibly be used for false identity that doesn't exist in the Maryland statute under which petitioner was convicted because it had to be an actual person. And the statute, as the case discusses, it explains that the legislative intent was an actual person. And it goes on to explain that the legislative intent was to address victims, actual people, and they use the word victims of identity theft. Whereas an interesting distinguishing factor with the Virginia statute is that actually expressly provides for a scenario where the person that's the subject of the false identity actually gave their permission to have their identity used in such a fashion. So. Did the board at any time have the did the board at any time have the Virginia case in front of the time that this was before it? The board presumably had the entire record before it. It did not. Of course, it had a record before it, but I'm asking you whether the particular decision from this court was before the board. That you saw the case? This case, Nunez-Vazquez. Did the board have that? I believe the board was aware of the Nunez case, but it did not get into the analysis there, if I recall correctly, because it strictly skipped on to the waiver analysis. And the waiver analysis didn't require an in-depth discussion of Nunez. So, I think it really boils down to that the Virginia statute allows someone to get permission for their identity to be used this way. And when you're thinking about least culpable conduct, I think that's a distinguishing factor. And in Maryland, the requirement is you're using someone's identity without their consent. Legislative intent was to address victims of identity fraud. And in other words, the least culpable conduct here is fingering an innocent person for a crime. And these are all things that, if remanded back to the board, the board can address in the first instance and determine what's most important to it, which facts are most important, and ultimately, hopefully, provide some illuminating guidance. Before you sit down, I just want to reiterate my request from before that when we get remand motions, the government obviously does not have to concede error. It doesn't have to take any positions. But these remand motions that say nothing, as you've seen, are being denied when they are opposed. And I don't want to, it's not a chastisement. That may not have even been your motion. But I just want to point out kind of what happened here is then when we have argument, the government comes in and concedes error, and we have to go through this process. So, again, it's not a criticism because these motions happen a lot, but I want to point out that that's what happened here. And we might be helped in the future by a speaking motion, even if it doesn't concede error. Your Honor, I am happy to deliver that message to the department. I already quickly addressed the cancellation of removal issue. If there are no further questions, I will just like to quickly conclude that Nunez does not proclose the board from finding that petitioner's conviction in the Maryland statute is a crime involving moral turpitude, given that the statutes are distinguishable, which requires remand for the board to provide further analysis. And as for petitioner asking for the support to grant remand for the grant of relief, that request is inappropriate because the support to decide adjustment is inappropriate. That is left to the agency's discretion. And we already know because the board strongly hinted at how that outcome is going to go. And if there are no further questions, I will briefly conclude the case should be remanded back to the board. Thank you for inviting me here today. Thank you. Let's hear from you, Mark, in rebuttal. Thank you, Your Honor, very much. The Maryland statute has no without consent language. It has no, none of that. One can be convicted under the Maryland statute, even if they collude with another to present the fake identity. In other words, with the consent of someone else, and pardon me while I remove my mask, I just realized I left it on, one can present the false identity and be prosecuted. So, there is no. Counselor, you may be right about that. You may be right, and that may ultimately prevail. I just am speaking purely for myself. I think the biggest obstacle that faces us in these questions is the, is the Chenery decision and the fact that it retains a considerable vitality. And this is right at the heart of the board's, what the board does, both because it's been charged by Congress with an important role in the interpretation of the immigration laws and because it has a developed jurisprudence on the CIMT question. And it's something where the administrative state, with all its problems, can still provide a nationwide uniformity to these kinds of questions that the episodic entries of the federal courts of appeals cannot. So, the thing that gives me pause is going at this without, it seems to go against the grain of the Chenery decision in this case. And when something goes against the grain of Chenery, it makes me feel like I'm writing a little bit of an advisory opinion. And I don't, I don't, I feel uneasy about that. And, you know, nobody's cutting you out from making your arguments. It's just a question of whether, whether the right, whether the orderly way of proceeding is to gain the benefit of what the board says, we can agree or disagree with it. But at least we would be, and at least we would be comfortably within what Chenery seems to suggest. That's, that's the, that's the problem. You have decent arguments on the merits, in my view, but I just worry about sort of commandeering the function of the board in reversing order here. And I think we have discretion to go either way. Allow me to add one more point to address the court's concern. What we have here is because of a misapplication of the categorical approach by the IJ and boards ping-ponging without addressing this issue, as its role requires, this petitioner can't get out of detention. And he's been detained for over three years and four months now, far, far longer than any state court sentence he ever received. And I look to the court's decision in Suarez-Valenzuela v. Holder as a way to say, we can avoid a further miscarriage here of justice if we can get this court to issue a decision on the merits of — we're talking about whether something is a CIMT or not, but if being convicted of this particular statute, it's not an admirable thing. Whether it's ultimately judged to be a CIMT may be one thing, but being convicted of identity theft, whether it's a CIMT or not, is still a very detrimental kind of thing in terms of whom Congress wished to welcome into the country and whom it did not. So, I don't see the miscarriage of justice particularly. I want to thank the court for its time. I see my time is up. You go ahead. Again, it's my custom to let people have the last word. So, please go ahead. Your Honor, I appreciate that very much. I do not want to take any more of the court's time. I have been able to present our case, and I thank you so much for that. We thank you.
judges: J. Harvie Wilkinson III, Allison J. Rushing, Henry F. Floyd